WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>David Peter Deysie, Jr.,<br><br>    Defendant. | No. CR-14-8112-001-PCT-GMS |

Pending before the Court is Defendant's Motion to Suppress. (Doc. 17.) For the following reasons, the Motion is denied.

## BACKGROUND

Defendant David Peter Deysie, Jr. was riding in the front passenger seat of a vehicle on April 6, 2014. His girlfriend, Kayla Amaro, was the driver and registered owner of the vehicle. Her seven-year-old son was in the back seat. U.S. Park Ranger Stephen Little stopped the vehicle inside of Grand Canyon Nation Park for failure to stop at a stop sign. He identified the vehicle's occupants and learned that both Deysie and Amaro had non-extraditable misdemeanor warrants.

Ranger Little recognized the odor of unburnt marijuana emanating from the vehicle and asked if there was any inside. Deysie confirmed that there was marijuana that belonged to him and he provided a medical marijuana card. At that point, Ranger Little called for backup. After backup arrived, Ranger Little again approached the vehicle and Deysie handed over a bag containing marijuana and paraphernalia to Ranger Little. Deysie did this voluntarily and without Ranger Little requesting it. Ranger Little placed

the drugs on the top of the vehicle.

Ranger Little next asked if there were any weapons in the vehicle. Deysie looked toward the center console and then the driver's side floorboard and stated that there was a knife in the center console. Deysie pointed to the knife and began to reach toward it. At that point, Ranger Little had everyone step out of the vehicle for safety purposes. The vehicle occupants were moved away from the vehicle and watched by another officer. Initially a single officer and vehicle arrived as backup but at some point during the stop a total of four vehicles and five officers were present.

After everyone had exited the vehicle, Ranger Little continued to smell the odor of unburnt marijuana emanating from the vehicle. Ranger Little then searched the vehicle based on the belief that it contained additional marijuana and drug paraphernalia. He testified that this search was based on: the marijuana that was turned over, the continued presence of the odor of marijuana in the vehicle, the admission that there was a knife in the car, and the outstanding warrants. Ranger Little also testified that based on his training and experience, defendants will sometimes volunteer a small amount of drugs in the hopes of deterring the officers from searching for and finding additional drugs or paraphernalia. He testified that he has been involved in over one hundred drug stops but could not testify to a specific number of times that he had witnessed such behavior.

During the search, Ranger Little discovered a loaded .357 Smith and Wesson revolver under the driver's seat. Ranger Little informed Deysie that he was not under arrest but that Ranger Little was investigating his possession of the marijuana and firearm. Ranger Little read Deysie his *Miranda* rights. Deysie stated that he understood and was willing to speak with the Rangers. Deysie proceeded to admit ownership of the gun and explain how he purchased it. Deysie also told the rangers that he had spent six years in prison for aggravated DUI.

Amaro was upset and angry about the discovery of the revolver and informed the rangers that she was unaware of its presence. She stated that Deysie normally kept his guns in his own car and not in hers.

Officer Little also determined based on his interviews and search of the car that Deysie and Amaro had been in a relationship and living together for years. At the time of the stop, they were traveling together on a several-day vacation. There was luggage in the car which appeared to contain clothing and other personal items for all of the vehicle occupants.

Deysie now moves to suppress the gun and ammunition on two grounds. First, he argues that there was no probable cause to search the vehicle. Second, he argues that the search was not incident to arrest. The government argues that Deysie lacks standing to challenge the search and that there was probable cause supporting it. Although the government does not argue that the search was conducted incident to any arrest, it argues that it would also have been justified as a search incident to arrest if Deysie had in fact been placed under arrest. Deysie did not submit a reply. This Court held a hearing on this matter on July 23, 2014.

**DISCUSSION**

**I.     "Standing"**

A defendant must have had a legitimate expectation of privacy in the place that was searched in order to allege a violation of Fourth Amendment rights. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978); *United States v. Pulliam*, 405 F.3d 782, 786 (9th Cir. 2005). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." *Rakas*, 439 U.S. at 134. Thus, a person seeking to exclude evidence allegedly obtained in violation of the Fourth Amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence. "[T]o say that a party lacks fourth amendment standing is to say that his reasonable expectation of privacy has not been infringed. It is with this understanding that we use 'standing' as a shorthand term." *United States v. Taketa*, 923 F.2d 665, 669–70 (9th Cir. 1991) (citation omitted).

/ / /

A passenger does not usually have a reasonable expectation of privacy in another person's vehicle. *Pulliam*, 405 F.3d at 785–86. This is true for an ordinary passenger, or a "passenger *qua* passenger," because they have no legitimate expectation of privacy based on a possessory or exclusionary interest in the vehicle. *See United States v. Aquil*, 202 F.3d 279 (9th Cir. 1999). However, "[a] person may have a legitimate expectation of privacy in a place or object he does not own." *United States v. Perez*, 689 F.2d 1336, 1338 (9th Cir. 1982). In *Rakas*, the Court explicitly cautioned that the determination of whether a person has a legitimate expectation of privacy is not controlled by that person's legal ownership interest in the area searched or their status as guest, licensee, or invitee. 439 U.S. at 142–43.

A defendant has the burden of proving a legitimate expectation of privacy by showing that the defendant manifested a subjective expectation of privacy in the area searched and that the expectation is one that society recognizes as objectively reasonable. *United States v. Sarkisian*, 197 F.3d 966 (9th Cir. 1999). For example, the Ninth Circuit has held that a driver has a legitimate expectation of privacy in a vehicle he does not own if he operates it with the permission of the rightful owner. *United States v. Portillo*, 633 F.2d 1313, 1317 (9th Cir. 1980).

Here, Deysie has standing to challenge the search of the vehicle because he demonstrated a subjective expectation of privacy in the vehicle and his expectation is one that society recognizes as objectively reasonable. Deysie lived with Amaro, who was his girlfriend. Although she owned the vehicle, he was traveling with her on vacation and every indication is that they shared a home, and that he had a right to be in her vehicle and exclude others from it. Ranger Little did not know whether Deysie had ever driven the vehicle, but Deysie had placed the gun under the driver's seat at some point and Amaro was not aware of its presence. Deysie was also keeping his other personal belongings and luggage in the vehicle during the trip with the consent of Amaro. This establishes that he had a subjective expectation of privacy in the vehicle.

/ / /

Further, that subjective expectation is one that is objectively reasonable. Although Deysie was not married to Amaro, they lived together and were traveling together in the vehicle on vacation. A person who operates a car with permission of the owner has been found to have a legitimate expectation of privacy. Although Deysie was not personally operating the vehicle at the time of the stop, he had a similar level of possessory and exclusionary interest in the vehicle. He was not merely a passenger *qua* passenger, who only had permission to ride in the car for the drive in question. He had an ongoing relationship with the owner and the fact that his name was not on the registration is not dispositive. Although a cohabitating couple does not have all of the legal rights of a married one, society recognizes Deysie's expectation of privacy in Amaro's vehicle as objectively reasonable based on their relationship and shared use of the vehicle.

## II.   Probable Cause

The Fourth Amendment provides "[t]he right of the people to be secure in their possessions, houses, papers, and effects, against unreasonable searches shall not be violated." U.S. Const. amend. IV. Under the automobile exception, searching a vehicle without a warrant is permitted if the "officers have probable cause to believe that the vehicle contains contraband." *United States v. Ross*, 456 U.S. 798, 808 (1982). Probable cause is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The fact that an agent familiar with the odor of marijuana, smelled such an odor emanating from the automobile . . . alone was sufficient to constitute probable cause for a subsequent search for marijuana." *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973) (upholding search based on probable cause after officer jumped in an unmanned moving vehicle to stop it and smelled marijuana inside).

Here, Ranger Little had probable cause to believe that the vehicle contained additional drugs or paraphernalia. At the beginning of the stop he detected the odor of marijuana and Deysie admitted that there was marijuana in the vehicle. Based on this, Ranger Little called for backup in order to continue his investigation. Deysie then handed

1 over some marijuana and paraphernalia. Ranger Little learned that there was a weapon in the car and he already knew that both Deysie and Amaro had unresolved, outstanding warrants. He continued to detect the odor of marijuana from the car even after he had placed the bag Deysie handed to him on the roof. All of this, combined with Ranger Little's training and experience, gave him probable cause to search because there was a fair probability the vehicle contained additional drugs or paraphernalia.

Deysie argues that there was no probable cause because "once the defendant gave Little all the marijuana he possessed, there was no basis to believe there was additional marijuana or contraband in the vehicle." (Doc. 17 at 3.) An officer with probable cause can search the entire car for contraband. Ordinarily, an officer searching a car for drugs and paraphernalia need not stop after each discovery and determine again whether there is probably cause to continue the search. Similarly, a person stopped by officers cannot preempt a search and remove probable cause by volunteering some contraband to the officer. Here, Ranger Little had probable cause to search the vehicle under *Barron* after smelling the marijuana. He knew that there were drugs and a weapon in the car, and that both Deysie and Amaro had outstanding warrants. Ranger Little did not have to accept Deysie's claim that all of his marijuana was in the bag he handed over.

**IT IS HEREBY ORDERED** that the Motion to Suppress (Doc. 17) is **DENIED**.

Dated this 7th day of August, 2014.

/G. Murray Snow
United States District Judge